**COREY H., a minor By and Through his natural parents and next friends, B.H. and T.H. and B.H. and T.H., individually, Plaintiffs,**

v.

**CAPE HENLOPEN SCHOOL DISTRICT, and The Department of Education of The State of Delaware Defendants.**

No. CIV.A.02–1363–JJF.

United States District Court, D. Delaware.

Oct. 8, 2003.

Patricia M. O'Neill, Esquire of Patricia M. O'Neill, Esquire, Media, PA, for Plaintiffs.

Gretchen S. Knight, Esquire and Jennifer L. Brierley, Esquire, of Morris, James, Hitchens & Williams LLP, Wilmington, DE, Louann Vari, Esquire, of the Department of Justice of the State of Delaware, Wilmington, DE, for Defendants.

## *MEMORANDUM OPINION*

FARNAN, District Judge.

Pending before the Court are three motions, a Motion For Summary Judgment (D.I.16) filed by Defendants, the Cape Henlopen School District and the Department of Education of the State of Dela-ware, Plaintiff's Motion For Summary Judgment (D.I.20), and Plaintiff's Motion To Amend The Complaint And Add A Defendant Individually And By Name (D.I.22).[1] For the reasons set forth below, the Court will grant Defendants' Motion and deny Plaintiff's Motions.

## BACKGROUND

Plaintiff, Corey H., is a minor entitled to special education services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401. Plaintiff attended the Defendant, Cape Henlopen School District (the "Defendant District"), until his mother withdrew him from the Defendant District and placed him in a private special education facility, the Greenwood School ("Greenwood") in Vermont. Greenwood is a twenty-four hour residential school.

Through his parents and next friends, Plaintiff contends that Defendants have failed to fulfill their statutory obligation to provide him with a free appropriate public education ("FAPE"). When this action began during the 2000–2001 school year, Plaintiff was in the fifth grade. While in the third grade, Plaintiff received special education accommodations in a different school district. When he transferred the following year to the Defendant District, the Defendant District determined that Plaintiff was not eligible for special education accommodations. Plaintiff's mother disagreed with this determination and appealed to the hearing panel. Following the First Due Process Hearing, the First Due Process Panel reversed the Defendant District's initial finding. On November 5, 2001, the First Due Process Panel ordered the Defendant District to convene a meet-

---

1. As the Court understands it, Plaintiff is a minor and has brought this action by and through his parents and next friends. For ease of discussion, the Court will refer to Plaintiff in the singular for purposes of its Memorandum Opinion and Order, even though Plaintiff has designated his caption in the plural form.

ing to develop an appropriate individualized education program ("IEP") for Plaintiff on November 30, 2001. The First Due Process Panel also directed the Defendant District to decide whether Plaintiff was entitled to Compensatory Services for the Defendant District's initial failure to provide him with special education accommodations.

The Defendant District held meetings on November 30, 2001 and December 7, 2001, during which it discussed and completed the Plaintiff's IEP. Between these two meetings, Plaintiff's mother filed another administrative action against the Defendant District for a purported failure to follow the First Due Process Panel's decision.[2] As relief, Plaintiff's mother requested Defendants to pay for her son to attend school at Greenwood. A Second Due Process Hearing was held on these allegations in May 2002. After the Second Due Process Hearing, the Second Due Process Panel determined that Plaintiff was receiving a FAPE and that the Compensatory Services offered by the Defendant District were adequate to compensate Plaintiff for past FAPE deprivations.

By the instant action, Plaintiff alleges that Defendants violated the IDEA, the Americans with Disabilities Act, 42 U.S.C. § 12102 (the "ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). Plaintiff seeks injunctive relief requiring Defendants to comply with federal disability and education laws, compensatory damages to pay his private school education at Greenwood and punitive damages. Plaintiff's claims under the ADA were dismissed with prejudice on February 6, 2003. Accordingly, the Court's decision will focus on Plaintiff's

remaining claims under the IDEA and Section 504 of the Rehabilitation Act.

## DISCUSSION

### I. Standard of Review

#### A. *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, to properly consider all of the evidence without making credibility determinations or weighing the evidence the "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* To defeat a motion for summary judgment, the non-moving party must:

> do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the

---

**2.** After the Defendant District completed Plaintiff's IEP, Plaintiff returned to school at the Defendant District. The Defendant District implemented the changes outlined in the

Plaintiff's IEP until Plaintiff's mother removed him from the Defendant District and placed him in Greenwood.

Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. *Id.*

### B. Review Of An Administrative Panel's Decision

In *Board of Education v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court held that a reviewing court should give "due weight" to a final decision of an administrative body. Elaborating on this standard, the Court of Appeals for the Third Circuit has explained that district courts have "discretion to determine how much deference to accord the administrative proceedings, and although the district courts 'must consider the administrative finding of fact, [they are] free to accept or reject them.' But, if the district court chooses to depart from the agency's ruling, it should provide some explanation for its departure." *Carlisle Area School v. Scott P.*, 62 F.3d 520, 527 (3d Cir.1995) (citations omitted).

## II. Whether The Eleventh Amendment Bars Plaintiff's Claims

By their Motion For Summary Judgment, Defendants contend that the Eleventh Amendment bars Plaintiff's IDEA and Section 504 claims. Specifically, Defendants contend that these claims are barred by sovereign immunity, because Plaintiff chose to pursue his claims in a Section 1983 action.

In full, the Eleventh Amendment of the United States Constitution provides:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. 11. Under this Amendment, an individual cannot sue a nonconsenting state. *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 123 S.Ct. 1972, 1976, 155 L.Ed.2d 953 (2003). The states' Eleventh Amendment protection also extends to state agencies and the officers of state agencies who are sued in their official capacities. *See A.W. v. Jersey City Public Schools*, 341 F.3d 234, 238 (3d Cir.2003). However, "[u]nder certain circumstances ... a state may surrender its immunity by accepting federal funds [clearly and unmistakably] conditioned on the state's waiver of immunity." *Id.; Dellmuth v. Muth*, 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989).

In this case, the Court concludes that Defendants have waived their sovereign immunity for claims brought under the IDEA and the Rehabilitation Act. Section 1403(a) of the IDEA provides that a state shall not be immune from suit under the Eleventh Amendment. As the Third Circuit has recognized, this is an "unmistakably clear" expression of Congress's intent to condition receipt of federal funds upon the state's waiver of sovereign immunity. *A.W.*, 341 F.3d at 245–50. Similarly, with respect to Section 504 of the Rehabilitation Act, the Third Circuit has held that Section 504 "clearly notified the states 'that by accepting federal funds [pursuant

to this section], they would waive their Eleventh Amendment immunity[.]'" *Id.* at 242–43 (quoting *Lane v. Pena,* 518 U.S. 187, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996)). Because Defendants have accepted federal funds under the IDEA and Section 504 of the Rehabilitation Act, the Court concludes that Defendants have waived their sovereign immunity with respect to Plaintiff's IDEA and Section 504 claims.

Because the Eleventh Amendment is not a bar to Plaintiff's Section 504 or IDEA claims, the Court further concludes that Plaintiff is entitled to pursue his action pursuant to Section 1983. In *W.B. v. Matula,* 67 F.3d 484, 494–495 (3d Cir.1995), the Third Circuit recognized that Section 1983 was an appropriate vehicle by which a plaintiff may enforce his or her rights under the IDEA and Section 504. *Id.* at 495 (citing *Rodgers v. Magnet Cove Pub. Sch.,* 34 F.3d 642, 645 (8th Cir.1994)). Having concluded, as a threshold matter, that Plaintiff's claims are not barred by the Eleventh Amendment, the Court will turn to the merits of Plaintiff's claims.

### III. Whether Defendants Are Entitled To Summary Judgment On Plaintiff's Claim That They Violated The IDEA

In Count I of his Complaint, Plaintiff contends that Defendants violated his rights under the IDEA by: (1) providing him with an inappropriate IEP, (2) failing to award him appropriate Compensatory Services and (3) violating the time frame set by the First Due Process Panel's decision. On administrative review, the Second Due Process Panel concluded that there was no basis for Plaintiff's claims. Defendants contend that they are entitled to summary judgment on these claims, because Plaintiff has not offered evidence to create a genuine of material fact concern-

ing any alleged violation of the IDEA and no reasonable jury could find a violation of the IDEA on these facts. Plaintiff has cross-moved for summary judgment on his claims.

### A. Whether Defendants Committed A Procedural Violation of The IDEA As A Matter Of Law

By his Motion, Plaintiff contends that the Defendant District's failure to follow the First Due Process Panel's time frame for developing an appropriate IEP was a procedural violation of the IDEA as a matter of law. By their Motion, Defendants contend that any delay in implementing Defendant's IEP was insignificant such that Plaintiff cannot establish a violation of the IDEA as a matter of law.

██ Procedural flaws in an IEP do not automatically signify a deprivation of a student's FAPE. It is only when the mistake "compromise[s] the pupil's right to an appropriate education, seriously hamper[s] the parents' opportunity to participate in the formulation process, or cause[s] a deprivation of educational benefits" that an IDEA violation occurs. *See Coale v. State Dept. of Edu.,* 162 F.Supp.2d 316, 335 (D.Del.2001) (quoting *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983 (1st Cir. 1990)). However, "minor" procedural violations do not constitute an IDEA violation. *Id.*

██ Applying these principles to Plaintiff's claim, the Court concludes that the Defendant District did not violate Plaintiff's procedural rights under the IDEA. The First Due Process Hearing Panel ordered the Defendant District to convene a meeting to develop an appropriate IEP no later than November 30, 2001. Following that decision, the Defendant District met on November 30, 2001 to develop an IEP for Plaintiff; however, the Defendant District did not complete its work on the IEP

until December 7, 2001. Although the Court views this seven day delay as regrettable, the Court concludes that it is only a *de minimis* deprivation of the Plaintiff's educational benefits. In reaching this conclusion, the Court observes that the delay did not "seriously hamper" the Plaintiff's mother from participating in the development of his IEP. The Plaintiff's mother was present and vigorously participated at both the November 30th and December 7th meetings. Moreover, the Court concludes that the seven day delay was reasonable in light of the circumstances. To develop an IEP tailored for Plaintiff's education needs, the Defendant District needed to consider the input from various test results, teachers' observations, educational specialists, as well as the concerns voiced by Plaintiff's mother. (D.I. 12; Tab 5 at 14, 18). That the Defendant District took seven days to consider the information from these multiple sources and integrate that information into an appropriate IEP for Plaintiff does not, in the Court's view, constitute an unreasonable amount of time as a matter of law. Accordingly, the Court concludes, as a matter of law, that a reasonable jury could not find that the seven day delay violated Plaintiff's procedural rights under the IDEA, and therefore, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's claim that Defendants committed a procedural violation of the IDEA. Because Defendants are entitled to summary judgment on this claim, Plaintiff's cross-motion for summary judgment will be denied.

### B. Whether Defendants Committed A Substantive Violation Of The IDEA

Plaintiff next contends that the Defendant District did not create an appropriate IEP for him. Plaintiff further contends that the Defendant District is a hostile environment that contributed to a denial of his FAPE.

In response, Defendants contend that the Court should uphold the Second Due Process Panel's findings that the IEP developed for Plaintiff was reasonably calculated to provide him with a meaningful educational benefit, thereby satisfying Plaintiff's right to a FAPE. Defendants contend that the decision rendered by the Second Due Process Panel was well reasoned and supported by the facts in this case, and therefore, a grant of summary judgment in favor of Defendants and against Plaintiff is appropriate.

■ The IDEA requires a school district to create an IEP calculated to provide a child with a "meaningful educational benefit." *Ridgewood Bd. of Edu. v. N.E.*, 172 F.3d 238, 247–48 (3d Cir.1999). A "meaningful educational benefit" must be more than a "trivial educational benefit." *Id.* To satisfy this duty, an IEP should be constructed according to a "student-by-student analysis" that takes into account the child's personal capabilities. *Id.* It is when a child is not provided an appropriate IEP, and consequently denied his or her FAPE, that a school district has violated the IDEA. *Id.* at 249.

■ Applying the standards set forth by the Supreme Court and the Third Circuit in determining whether Defendants committed a substantive violation of Plaintiff's IDEA rights, the Court concludes that Defendants are entitled to summary judgment. The Second Due Process Panel concluded that the IEP developed by the Defendant District appropriately addressed Plaintiff's learning disabilities. (D.I.12). The Second Due Process Panel heard testimony from both parties, and in light of this and other evidence, found that the Defendant District had carefully constructed Plaintiff's IEP. The Defendant District developed the IEP in light of re-

cent tests conducted on Plaintiff and formulated the IEP to address Plaintiff's auditory difficulties, improve his language comprehension and expression, improve his performance in science and social studies, improve his analytical skills, and improve his behavior. (D.I.12). Plaintiff has not offered any evidence to rebut the Second Due Process Panel's findings regarding the adequacy of Plaintiff's IEP, and in the absence of any such evidence, the Court is not persuaded that it should depart from the findings of those experts comprising the Second Due Process Panel. Accordingly, the Court agrees with the findings of the Second Due Process Panel and concludes that Plaintiff's IEP was reasonably calculated to provide him with a meaningful educational benefit.

To the extent that Plaintiff contends that the Defendant District is a "hostile environment" that deprives Plaintiff of his FAPE, the Court likewise concludes that Defendants are entitled to summary judgment. Plaintiff's "hostile environment" claim is based on a November 16, 2001 incident, in which Plaintiff contends that he was removed from class by his teacher and "shoved out the door and held against a wall." (D.I. 21 at 14). The teacher involved in the incident and two other witnesses disagree with Plaintiff's characterization of this incident. The teacher and witnesses contend that Plaintiff was asked to step into the hall because of his disruptive behavior. They further contend that Plaintiff was given time to calm down and then returned to class without further incident. (D.I. 12; Tab 5 at 26, 27, 28).

■ A school's discipline of a child with a disability can lead to a violation of the IDEA if it results in a "change of placement." *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)(holding that a ten day suspension of a child may result in a change of placement that is prohibited by the IDEA). However, a school district may utilize normal, "nonplacement changing" procedures to deal with unruly children. *Id.* at 306, 108 S.Ct. 592.

■ Applying these standards, the Court concludes that the Defendant District is not a hostile environment that prevented Plaintiff from attaining a meaningful educational benefit. The alleged hallway incident occurred prior to the Defendant District's implementation of Plaintiff's IEP. Once the Defendant District began implementing the IEP, there are no further allegations of incidents demonstrating a hostile environment that might deprive Plaintiff of his FAPE. Further, the alleged hallway incident, under either Plaintiff's version or his teacher's version, did not result in a change of Plaintiff's placement. *Id.* at 324, 108 S.Ct. 592. Accordingly, the Court concludes that Plaintiff cannot establish a substantive violation of the IDEA as a matter of law, and therefore, the Court will grant Defendant's Motion For Summary Judgment and deny Plaintiff's Motion For Summary Judgment with respect to his claims of substantive IDEA violations.

C. *Whether The Defendant District Is The Least Restrictive Environment Appropriate For Plaintiff*

■ Plaintiff next contends that the Second Due Process Panel erred in analyzing his request for placement at Greenwood under the Least Restrictive Environment analysis, because Plaintiff's IEP violated the IDEA. In response, Defendants reiterate their contention that they did not violate the IDEA and contend that the Second Due Process Panel correctly proceeded to the Least Restrictive Environment analysis.

As the Court has previously concluded, Defendants did not violate the IDEA. Ac-

cordingly, the Court concludes that the Second Due Process Panel appropriately focused on the question of whether Greenwood was the Least Restrictive Environment for Plaintiff.

To the extent that Plaintiff contends that the Second Due Process Panel incorrectly concluded that Greenwood was not appropriate for Plaintiff under the Least Restrictive Environment analysis, the Court disagrees with Plaintiff's contention. The IDEA requires that "[t]o the maximum extent appropriate, children with disabilities ... [should be] educated with children who are not disabled...." 20 U.S.C. § 1412(a)(5)(A). This "mainstreaming" requirement is called the Least Restrictive Environment. *Coale*, 162 F.Supp.2d at 325. Residential (24–hour supervised) placement may be appropriate in various instances, particularly for "severely disabled child[ren]." *See M.C.*, 81 F.3d at 394 (finding residential placement appropriate for a child that had difficulties in using the bathroom, eating, and communicating with others); *Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 867, 873–74 (3d Cir.1990) (finding residential placement appropriate for "a profoundly retarded 12–year old with severe behavioral problems"). However, a court should keep in mind the " 'strong Congressional preference' for integrating children with disabilities in regular classrooms." *Oberti by Oberti v. Bd. of Edu. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1213 (3d Cir.1993) (citations omitted).

In reaching its conclusion that the Defendant District was the Least Restrictive Environment appropriate for Plaintiff and that Greenwood was not appropriate, the Second Due Process Panel acknowledged that Greenwood was a distant educational facility, hours away his home. The Second Due Process Panel also observed that, at Greenwood, Plaintiff would be in an environment without children who are not disabled. Based on these factors, the Second Due Process Panel concluded that Greenwood is a more restrictive environment than necessary for Plaintiff.

Reviewing the decision of the Second Due Process Panel, the Court concludes that the Second Due Process Panel correctly concluded that Greenwood is not the Least Restrictive Environment appropriate for Plaintiff. Although Plaintiff has difficulties, those difficulties do not rise to the level requiring a twenty-four hour residential school. *See Fuhrmann on Behalf of Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1043 (3d Cir.1993) (recognizing that IDEA does not entitle a child to the best education available, but only one reasonably calculated to provide him or her with a meaningful educational benefit). As the Court has noted, courts have only approved such residential facilities as the least restrictive environment when the child is severely retarded or has problems with basic life activities such as eating and communicating with others. *See M.C.*, 81 F.3d at 394; *Lester H.*, 916 F.2d at 867, 873–74. Further, as the Second Due Process Panel found, Plaintiff would likely benefit from being surrounded by peers without learning disabilities. (D.I.12). Plaintiff has not advanced any evidence regarding his condition or otherwise, to rebut the Second Due Process Panel's findings that Greenwood is a more restrictive environment than necessary. In the absence of any such evidence, the Court is persuaded that the findings of the Second Due Process Panel should be given significant weight. Accordingly, the Court concludes as a matter of law, that Greenwood is not the Least Restrictive Environment appropriate for Plaintiff, and therefore, Defendants are not required to pay for Plaintiff's placement at Greenwood. Because the Second Due Process Panel correctly considered and analyzed this is-

sue, the Court will grant Defendants' Motion For Summary Judgment and deny Plaintiff's Motion For Summary Judgment with respect to this claim.

D. *Whether The Compensatory Services Defendant District Offered To Plaintiff Were Adequate*

In the First Due Process Hearing, the First Due Process Panel determined that, contrary to the Defendant District's initial finding, Plaintiff was disabled and thus, entitled to special education services. (D.I.12). As a result, the First Due Process Panel directed the Defendant District to develop an IEP for Plaintiff, which could include Compensatory Services to make up for the past denial of Plaintiff's FAPE. The Defendant District subsequently created an IEP for Plaintiff which contained a "First Phase" of Compensatory Services. (D.I.12). Following a challenge of this IEP by the Plaintiff's mother, a Second Due Process Hearing Panel concluded that both the IEP and the Compensatory Services proposed by the Defendant District were adequate.

By his Motion For Summary Judgment, Plaintiff contends that the Second Due Process Panel erred as a matter of law in its conclusion that he is not entitled to tuition reimbursement and private placement at Greenwood in compensation for Defendant District's past denial of his FAPE. In response, Defendants contend that the Plaintiff's mother was unreasonable as to her request for private placement at Greenwood. Defendants further contend they provided an appropriate plan to make up for past deprivations of Plaintiff's FAPE.

 The IDEA provides that a child will be entitled to a FAPE until the stu-

dent turns twenty-one. *See* 20 U.S.C. § 1412(a)(1)(B). If a child is denied his or her FAPE, an award of Compensatory Services to make up for earlier deprivations is appropriate. *See Ridgewood,* 172 F.3d at 249 (3d Cir.1999). The period of deprivation to which a child is entitled Compensatory Services accrues from the time a school district "knows or should know that the student is receiving an inappropriate education." *Id.* at 250.

With respect to Plaintiff's request for placement at Greenwood, the Court has already concluded that placing Plaintiff in a private twenty-four hour school would not comply with the IDEA's requirement of educating the child in the Least Restrictive Environment. Moreover, the Court is puzzled by the Plaintiff's mother's request to place her son in a twenty-four hour educational facility. This request is inconsistent with her refusal to accept any Compensatory Services for Plaintiff that the Defendant District offered during after-school hours or during the summer months. (D.I. 12; Tab 4 at U). Further, Plaintiff has presented no evidence demonstrating why the Court should depart from the Second Due Process Panel's decision that the Compensatory Services the Defendant District offered him were adequate. Because the Court has already concluded that Defendants were not required to pay for Plaintiff's attendance at Greenwood, and Plaintiff has not advanced any facts to rebut the Second Due Process Panel's conclusion that the Compensatory Services offered to Plaintiff were adequate, the Court will grant summary judgment in favor of Defendants and against Plaintiff on his claim that the Compensatory Services offered to him were inadequate.[3]

---

3. Because the Court will grant Defendants' motion for summary judgment, it will not discuss the availability of punitive damages for an IDEA violation.

## IV. Whether Defendants Are Entitled To Summary Judgment On Plaintiff's Claim That They Violated Section 504 Of The Rehabilitation Act

■ In Count Two of his Complaint, Plaintiff alleges a violation of Section 504 of the Rehabilitation Act. By their Motion For Summary Judgment, Defendants contend that they provided Plaintiff with a FAPE, and therefore, Defendants are entitled to summary judgment. Other than their previous arguments related to the IDEA, Plaintiff provides no further response to Defendants' argument.

The Third Circuit has stated that there are "few differences, if any" between IDEA's affirmative duties, and Section 504's negative proscriptions. *See Ridgewood*, 172 F.3d at 253 (3d Cir.1999). Both statutes require that school districts provide each student with a FAPE. *Id.* Therefore, if Defendants provided Plaintiff with his FAPE under the IDEA, they have not violated Section 504 of the Rehabilitation Act.

The Court has already concluded that the Defendant District was providing Plaintiff with his FAPE in accordance with the requirements of the IDEA. Accordingly, the Court will grant Defendants' Summary Judgment Motion on Plaintiff's Section 504 claim and deny Plaintiff's Motion For Summary Judgment on this claim.

## V. Whether Defendants Are Entitled To Summary Judgment On Plaintiff's Claim Under 42 U.S.C. § 1983 For Failure To Train

In Count IV of his Complaint, Plaintiff alleges that the Defendant District violated Plaintiff's rights by failing to train its employees. Plaintiff contends that this failure to train led to the denial of his FAPE. Plaintiff requests summary judgment on his claim, and Defendants have also moved for summary judgment contending that Plaintiff cannot establish a violation of Section 1983 based on the failure to train as a matter of law.

■ To establish a Section 1983 failure to train violation under the IDEA and Section 504, a plaintiff must establish the municipality's "deliberate indifference" to providing him a FAPE. The plaintiff must also prove that this indifference was the "moving force" behind his injury. *See O.F.*, 246 F.Supp.2d at 421 (quoting *Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Reviewing Plaintiff's claim in light of this standard, the Court concludes that Plaintiff has failed to establish that the Defendants acted with deliberate indifference to providing him with a FAPE. As the Court has previously concluded, Defendants fulfilled their obligations under the IDEA and Section 504 and provided Plaintiff with a FAPE. Accordingly, the Court will grant Defendants' Summary Judgment Motion and deny Plaintiff's Motion for Summary Judgment on this claim.

## VI. Plaintiff's Motion To Amend The Complaint And Add A Defendant Individually And By Name

By his Motion, Plaintiff seeks to Amend his Complaint And Add A Defendant Individually And By Name. (D.I.22). Because the Court has granted the Defendants' Motion For Summary Judgment Motion, the Court will deny as moot Plaintiff's Motion To Amend The Complaint And Add A Defendant Individually And By Name.

## CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion For Summary Judgment. In addition, the Court will deny Plaintiff's Motion For Summary Judgment and deny as moot Plaintiff's Mo-

tion To Amend The Complaint To Add A Defendant Individually And By Name.

### FINAL JUDGMENT ORDER

For the reasons set forth in the Court's Memorandum Opinion and Order dated October 8, 2003;

IT IS ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of Defendants, Cape Henlopen School District and the Department of Education of the State of Delaware and against Plaintiff, Corey H., a minor by and through his natural parents and next friends, B.H. and T.H. and B.H. and T.H., individually.